JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FEDERAL DEPOSIT
INSURANCE CORPORATION,
as Receiver for Security Pacific
Bank

                     Plaintiff,

vs.

Martin C. Yacoobian, Jr., an
Individual; and DOES 1 through
20, inclusive

                     Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV09-06833JFW(AGRx)

**STATEMENT OF DECISION**

Date: July 12, 2010
Time: 1:30 p.m.
Courtroom: 16
Judge: Hon. John F. Walter

Disc. Cut-Off: July 5, 2010
Pretrial Conf. Date: August 13, 2010
Trial Date:    August 24, 2010

NOTE: CHANGES MADE BY
THE COURT

**STATEMENT OF DECISION**

Having reviewed the pleadings and papers on file, the Court hereby finds that there is no genuine issue of material fact and the Plaintiff is entitled to judgment against the Defendant as a matter of law.

## FINDINGS OF FACT

The court finds that the following facts are undisputed:

1.     Plaintiff, FDIC, is a federal corporation originally created as a part of the Federal Reserve Act. Act June 16, 1933, c. 89, § 8, 48 Stat. 168 which added § 12B to the Federal Reserve Act.  12 U.S.C. § 1811(a).  On November 7, 2008, the Commissioner of Financial Institutions of the State of California took possession of Security Pacific Bank (SPB"), a California bank based in Los Angeles and appointed the FDIC as Receiver of SPB. 12 U.S.C. § 1821(c)(3)(A); Declaration of Peggy Carollo ("Carollo Decl."), ¶ 4.

2.     On or before December 17, 2007, Yacoobian, a customer of SPB with several existing loans, requested SPB to issue a letter of credit in the amount of $1,580,000 for the account of Yacoobian to Credit Suisse Premium Finance LLC ("CSPF") as beneficiary. Carollo Decl., ¶ 5, 7 and Exhibit A thereto; Defendant's Response to FDIC's Request for Admissions, Set One, ("Response RFA"), Response to Request No. 13.

3.     Yacoobian requested the letter of credit because: 1) his family, through a family trust (the "MCY III 2007 Trust") had purchased life insurance policies with death benefits totaling $22,000,000 insuring the life of his mother, who was in her eighties, for estate planning purposes; 2)  the premiums for the policies were being financed by CSPF; and 3) CSPF required the  letter of credit from Yacoobian in conjunction with the financing to secure payment of its loan to the MCY III 2007 Trust of $1,612,853. The MCY III 2007 Trust was formed as part of the overall Yacoobian family estate and tax planning structure.   The estate plan called for procuring insurance policies on Yacoobian's mother's life to offset estate taxes of between $20 million and $25 million on the estate of Yacoobian's parents, for the benefit of Yacoobian and his

family upon the death of the surviving parent, and to put millions of dollars in the pockets of the Yacoobian family.  Carollo Decl., ¶ 6 and Exhibits A, I and K thereto; Defendant's Responses to FDIC's Interrogatories, Set One ("Response Introgs"), Response to Interrogatory No. 1; Amended Answer of Defendant Martin C. Yacoobian, Jr to Complaint("Amended Answer") ¶ 7; Complaint, Martin C. Yacoobian, Sr., *et al.* v. Bruce Givner, *et al.*, Los Angeles Superior No. BC424254 ("Givner Complaint"), ¶¶ 6, 27, 31-32, 35, 38-39, 41-44, 49-54, 58; Declaration of Patricia Hausknost ("Hausknot Decl."), Exhibits H and J; Defendant's Supplemental Response to Plaintiff's Request for Admissions, Set One("Supp. Response RFA"), Responses to Requests Nos. 14-15; Tumpson Decl., Exhibit F-1 and F-2.

4.      CSPF did, in fact, loan MCY III 2007 Trust $1,612,853 pursuant to a Loan and Security Agreement, dated as of December 17, 2007, to finance the premiums for the insurance policies purchased on Yacoobian's mother's life.  As a result, the trust was indebted to CSPF for $1,612,853 and was obligated to repay CSPF that amount in accordance with the terms of the said Loan and Security Agreement.  Response Introgs, Response to Interrogatory No. 1; Carollo Decl., Exhibit I and K; Hausknost Decl., Exhibits H and J; Givner Complaint, ¶¶ 53-56; Tumpson Decl., Exhibits F-1, § 2.1and Schedule A, § 2 thereof,  and F-2 .

5.      On or before December 19, 2007, CSPF declined to accept a letter of credit from SPB in connection with its loan to MCY III 2007 Trust and required a letter of credit from a better capitalized bank.  Carollo Decl., ¶ 8 and Exhibits C and D thereto; Amended Initial Disclosures of Defendant Martin C. Yacoobian, Jr. Pursuant to Federal Rules of Civil Procedure, Rule 26, page 2; Givner Complaint, ¶ 55; Supp. Response RFA, Response to Request No. 16-17.

6.      After CSPF declined to accept SPB's letter of credit, SPB agreed to assist Yacoobian by requesting another bank with which SPB had a relationship to issue the letter of credit.  On December 17, 2007, in order to induce City National Bank ("CNB") to issue the letter of credit for Yacoobian, SPB executed a CNB form

document appointing CNB as agent to establish in the name of CNB a letter of credit for the account of Yacoobian in the amount of $1,580,000.00 in favor of CSPF as beneficiary (the "Appointment").  Carollo Decl., ¶ 9, 10 and Exhibits B, C and D; Hausknost Decl., ¶ 4 and Exhibits A, B and C; Givner Complaint, ¶ 56; Supp Response RFA, Response to Request No. 17-18.

7.     On or about December 17, 2007, SPB and Yacoobian applied to CNB for a letter of credit in the amount of $1,580,000 for the account of Yacoobian in favor of CSPF as beneficiary.  As part of the application, SPB and Yacoobian both signed an "Irrevocable Standby Letter of Credit Application at the Request of Another Bank," (the "Application"), and an agreement entitled, "Letter of Credit Agreement" ("LCA") (together, the "Application Documents").  CNB required SPB to enter into the LCA, as "Requesting Bank," as a condition to issuing the letter of credit for the account of Yacoobian.  The LCA provided that SPB and Yacoobian were jointly and severally liable to immediately reimburse CNB for all amounts paid by CNB on any demand on the letter of credit issued by CNB pursuant to the LCA, and for costs of collection, including attorneys fees.  Carollo Decl., ¶ 11 and Exhibits C and D; Hausknost Decl., ¶ 5 and Exhibits B and C; Response RFA, Response to Requests Nos. 3-7; Supp. Response RFA, Response to Requests Nos. 3-7, 19, 20, 22-24.

8.     On December 19, 2007, CNB issued Irrevocable Standby Letter of Credit Number 071217.OD.4756 in the amount of $1,580,000.00 for the account of Yacoobian in favor of CSPF as beneficiary (the "LOC").   Carollo Decl., ¶ 13 and Exhibit E thereto; Hausknost Decl. ¶ 6 and Exhibit D thereto; Amended Answer, ¶ 10; Supp. Response RFA, Response to Request No. 19; 25.

9.     On December 21, 2007, SPB and Yacoobian both signed a document requesting an amendment to the LOC.  On December 21, 2007, CNB issued its "Amendment No. 1 to Irrevocable Standby Letter of Credit Number 071217.OD.4756" in the amount of $1,580,000.00 for the account of Yacoobian in favor of CSPF as beneficiary (together with the LOC, the "Amended LOC").  The Amended LOC provided, *inter alia*, that

CSPF could draw on the LOC: 1) on default in connection with CSPF's Loan and Security Agreement financing the insurance policies on Yacoobian's mother;  or 2) if CSPF received a notice of non-extension of the Amended LOC.  Carollo Decl., ¶ 14-15 and Exhibits F and G; Hausknost Decl., ¶ 7-8 and Exhibit E and F thereto; Response RFA, Response to Request Nos. 7-9; Supp. Response to RFA, Response to Requests Nos. 7-9, 26; Amended Answer, ¶ 11.

10.     On April 21, 2008, at CNB's request and as required by the Appointment and the Application Documents, SPB executed a document entitled, "Security Agreement" (the "Security Agreement") which recited the pledge by SPB of a certificate of deposit at CNB in the amount of $1,850,000 to secure, *inter alia*, all of SPB's obligations to CNB, which included its obligation, pursuant to the terms of the LCA, to reimburse CNB for draws on the Amended LOC.  Carollo Decl., ¶¶ 10, 11, 16 and Exhibits B-D and H; Hausknost Decl.¶¶ 4, 5, 9 and Exhibits A-C and G.

11.     On May 22, 2009, CSPF submitted a draw on the Amended LOC to CNB.  On May 27, 2007, CSPF submitted a second draw on the Amended LOC after CNB notified it of certain discrepancies in the draw documents.  Both sets of draw documents consisted of a one-page Sight Draft and a one-page supporting document which recited that there had been a breach of the Loan and Security Agreement between CSPF and Yacoobian for the benefit of MCY III 2007 Trust and that CSPF was therefore drawing the amount of $1,580,000.00 under the Amended LOC.  CSPF notified Yacoobian of both draws at or about the time they were made. Carollo Decl., ¶¶ 17-19 and Exhibit I, J and K; Hausknost Decl.¶¶ 10-12 and Exhibit H, I and J; Amended Answer; ¶ 13; Supp. Response RFA, Response to Request No. 32, 43.

12.     On May 29, 2009, CNB debited from SPB's certificate of deposit at CNB the amount of $1,580,000.00 to reimburse itself for its payment to CSPF pursuant to the May 27 Draw Documents. The reimbursement of CNB by the Receiver was effected by CNB pursuant to the obligation of SPB under the terms of the LCA. Carollo Decl., ¶ 19-21, 23 and Exhibits K and L ; Hausknost Decl.¶ 12-14 and Exhibits J, K and L

STATEMENT OF DECISION

-4-

thereto; Amended Answer, ¶ 14; Supp. Response RFA, Response to Request No. 45; Supp. Response RFA, Response to Request No. 46; 51, 52.

13.     On June 1, 2009, CNB paid CSPF $1,580,000.00 pursuant to the May 27 Draw Documents.  Hausknost Decl.¶ 12 and Exhibit K thereto; Amended Answer, ¶ 13.

14.     At all times material to this litigation, SPB had no indebtedness or other obligation to CSPF.  Carollo Decl., ¶ 21.

15.     Both the payment by CNB to CSPF on the letter of credit and the reimbursement of CNB by the Receiver/SPB benefitted Yacoobian.  Response Introgs, Response to Interrogatory No. 1; Carollo Decl., ¶ 5, 6, 7, 17, 19, 20 and 21 and Exhibits A, C, D, I, K and L thereto; Hausknost Decl., ¶ 10, 12, 13 and 14 and Exhibits B, C, H, J, K and L thereto; Supp. Response RFA, Response to Request No. 55.  Hausknost Decl., ¶ 10, 12, 13 and 14 and Exhibits B, C, H, J, K and L thereto.

16.     Despite demand, Yacoobian has failed to reimburse the Receiver for the $1,580,000 it paid, or for any amount.  Carollo Decl., ¶ 28; Amended Answer, ¶ 15.

## CONCLUSIONS OF LAW

1.     The Receiver has the right to bring this action and this motion because it possesses all of the rights of SPB related thereto.  12 U.S.C. § 1821(d)(2)(A)(i) and B.

2.     In reimbursing CNB for its payments to CSPF under the Amended LOC, the Receiver satisfied Yacoobian's obligation to CNB.  The Receiver's reimbursement obligation under the Letter of Credit Agreement was merely secondary, while Yacoobian's was primary.  Yacoobian is therefore liable to reimburse the Receiver under the doctrine of equitable indemnity for the $1,580,000 payment to CNB and costs and expenses.  13 Witkin, SUMMARY OF CALIFORNIA LAW, *Equity*, § 178 (10th Ed. 2005); Civil Code § 2847.

3.     Yacoobian and the Receiver/SPB were jointly and severally liable for reimbursement of CNB under the Letter of Credit Agreement.  Because the payment by CNB on the Amended LOC was solely for Yacoobian's benefit and the Receiver/SPB received no benefit whatsoever, when the Receiver reimbursed CNB for

its payment, its entire payment was more than its share of such joint liability. Yacoobian is therefore liable to the Receiver for contribution of the entire payment of $1,580,000.  13 Witkin, SUMMARY OF CALIFORNIA LAW, Equity, § 179 (10th Ed. 2005); Civil Code § 1432 ("[A] party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him.").

4.     Because the payment by CNB on the Amended LOC was solely for Yacoobian's benefit and the Receiver/SPB received no benefit whatsoever, the Receiver's reimbursement obligation under the Letter of Credit Agreement was merely secondary, while Yacoobian's was primary.  The Receiver is therefore subrogated to the rights of CNB against Yacoobian under the Letter of Credit Agreement.  Witkin, SUMMARY OF CALIFORNIA LAW, *Equity*, § 183 (10th Ed. 2005);  Civil Code §§ 2848. As further explained below, the Court also finds that Yacoobian is a surety of the MCY III 2007 Trust's debt to CSPF and that the Receiver is subrogated to CSPF's rights against Yacoobian.  Yacoobian is therefore liable to the Receiver for the $1,580,000 paid to CNB plus costs and expenses of suit, including attorneys' fees.

5.     Under California law, the roles of the parties to the Amended LOC were as follows: 1)  SPB and Yacoobian were each an "applicant"; 2) CNB was the "issuer"; and 3) CSPF was the "beneficiary."  Commercial Code § 5102(2), (3) and (9).  When it paid on the Amended LOC, CNB, the issuer, became subrogated to the rights of the beneficiary, CSPF, to the same extent as if the issuer were a secondary obligor of the underlying obligation owed to the beneficiary.  Commercial Code § 5117(a).  In turn, upon reimbursing CNB, the Receiver obtained the same subrogation rights. Commercial Code § 5117(b).

When Yacoobian agreed with CSPF to put up a letter of credit to secure payment of CSPF's loan to MCY III 2007 Trust and to reimburse CNB for any draws, he became a surety of MCY III 2007 Trust's debt to CSPF for the amount of the letter

of credit.  Civil Code § 2787.  In this case, Yacoobian promised to answer for the debt, default or miscarriage of MCY III 2007 Trust by putting up the letter of credit for which he was personally liable.  As such, if CNB had failed to pay on the Amended LOC, CSPF would have had the right to recover the amount of the LOC from Yacoobian personally immediately on the default of MCY III 2007 Trust and failure of CNB to pay on the Amended LOC.  Civil Code §  2807 ("A surety who has assumed liability for payment or performance is liable to the creditor immediately upon the default of the principal, and without demand or notice").  Because it is subrogated to CSPF's rights against Yacoobian, the Receiver may collect $1,580,000.00 owed by Yacoobian as surety for MCY III 2007 Trust's debt to CSPF.

6.      Although, the Letter of Credit Agreement contains no explicit provision requiring Yacoobian to reimburse SPB in case SPB is required to reimburse CNB for payments made under the Amended LOC, because applicable law must be incorporated into the Letter of Credit Agreement, it contains such a requirement, and was breached when Yacoobian failed to reimburse SPB.  1 Witkin, SUMMARY OF CALIFORNIA LAW, *Contracts*, § 752 (10th Ed. 2005).  Thus, the California statutory rights of indemnity (Civil Code § 2847), contribution (Civil Code § 1432), subrogation (Civil Code §§ 2848 and 2849) and subrogation under the UCC (Commercial Code § 5117) were included in the Letter of Credit Agreement when made as fully as if incorporated by reference.  As such, the promise by SPB to reimburse CNB for payments under the Amended LOC must be deemed to carry with it the obligation, pursuant to such laws, of Yacoobian to reimburse the Receiver for the money paid to CNB pursuant to that promise.  By failing to pay on demand, Yacoobian breached the Letter of Credit Agreement and is therefore liable for $1,580,000 plus costs of suit, including attorneys' fees.

7.      Yacoobian was unjustly enriched by the Receiver's payment to CNB, to the detriment of the Receiver. 1 Witkin, SUMMARY OF CALIFORNIA LAW, *Contracts*, § 1013, 1016 (10th Ed. 2005).   He is therefore liable to pay restitution to the Receiver in the amount

of $1,580,000.

8.      Yacoobian is liable to the Receiver for money paid in the amount of $1,580,000.  *Rains v. Arnett*, 189 Cal.App.2d 337, 344 (1961).

9.      Yacoobian is liable to the Receiver for attorneys' fees. Under either the breach of contract or the subrogation cause of action discussed above, attorneys' fees may be awarded to the Receiver pursuant to the terms of the Letter of Credit Agreement. Civil Code § 1717.   Furthermore, because recovery is sought under the California UCC's Article 5, attorneys' must be awarded to the prevailing party.  Commercial Code § 5111(e).  Yacoobian is also liable for prejudgment interest at the rate of ten percent per annum from May 29, 2009.

Dated: July 7, 2010

_____
John F. Walter,  United States District Judge